# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| JEFFREY NEYLON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-00533-O |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion to Transfer Venue (ECF No. 16), filed August 25, 2017. United States District Judge Reed O'Connor referred this motion to the undersigned for determination or recommendation by Order entered October 26, 2017. ECF No. 30. After consideration of the pleadings and the applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion to Transfer Venue and **TRANSFER** this case to the Lincoln Division of the District of Nebraska.

## BACKGROUND

Plaintiff Jeffrey Neylon ("Neylon") alleges that Defendant BNSF Railway Company ("BNSF") terminated him from his employment as a conductor in Lincoln, Nebraska in violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. ECF Nos. 16 at 1 and 18 at 1. Neylon claims that he suffered an injury while climbing onto a train in June 2015. ECF No. 1 at 2. He did not believe he was injured at the time and only brought his injury to the attention of BNSF on November 4, 2017, after a physician diagnosed him with tendinitis. *Id.*; ECF No. 16 at 1.

On January 4, 2017, BNSF held an investigation, which is "an on-property hearing provided pursuant to the collective bargaining agreement applicable to Neylon," at its Heartland

Division in Lincoln, Nebraska. ECF No. 16 at 2. In attendance at the hearing were Neylon; Ronald Trauernicht, Neylon's local union chairman; Donald Smith, BNSF's Assistant Terminal Superintendent for Lincoln; Brian Anders, a Terminal Road Foreman in Lincoln; Dave McCoy, a Conductor and the Vice Local Chairman in the South Division of the 305 Local of Neylon's union; and Allen Wolfe, the Terminal Superintendent in Lincoln. ECF No. 17-1. After this hearing, on January 17, 2017, BNSF sent Neylon a Notice of Dismissal, which informed that he was terminated from his position because he failed to report his injury in a timely fashion. ECF Nos. 16 at 2–3 and 18 at 3.

Neylon then brought this lawsuit against BNSF in the district and division of its headquarters, Fort Worth, Texas. ECF No. 1 at 2. Neylon is a resident of Nebraska. *Id.* BNSF has now moved to transfer this case to the Lincoln Division of the District of Nebraska under 28 U.S.C. § 1404, contending that venue is more appropriate there as the events giving rise to the suit took place there, and Neylon and most of the witnesses reside there. ECF No. 16 at 1. Neylon argues in response that he seeks to hold BNSF's officers who reside and work in the Northern District of Texas accountable and will be unable to compel those officers to attend trial if the Court transfers the case to Nebraska. ECF No. 18 at 2.

## LEGAL STANDARD AND ANALYSIS

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Such a transfer is not a transfer between forums but between venues. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc).

The Court must first determine whether the suit could have been properly brought in the District of Nebraska. "A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . . ." 28 U.S.C. § 1391(a). For venue purposes, a defendant corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Venue is proper in the District of Nebraska both because BNSF is subject to suit in Nebraska and is thus deemed a resident of Nebraska, satisfying 28 U.S.C. § 1391(a)(1), and because a substantial part of the events giving rise to the claim occurred in Nebraska, satisfying 28 U.S.C. § 1391(a)(2).

The party moving for transfer of venue bears the burden of proving by a preponderance of the evidence that transfer is appropriate. *Bank One, N.A. v. Euro-Alamo Investments, Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.). "This requires a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony." *Id.* The moving party has the burden in reflection of "the appropriate deference to which the plaintiff's choice of venue is entitled." *In re Volkswagen of Am.*, 545 F.3d at 315. The plaintiff's choice of venue is also "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d 429, 434–35 (5th Cir. 2003). The weight accorded the choice of venue is diminished where the plaintiff brings suit outside his home forum. *Santellano v. The City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y.1988)); *see also TransFirst Group, Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.). Neylon brings this suit outside his home venue of Nebraska, so his choice of venue carries less weight.

When considering a motion to transfer venue, a district court must consider a number of private and public interest factors, "none of which can be said to be of dispositive weight." *In re*

3

*Volkswagen of Am.*, 545 F.3d at 315 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

## I.  The private interest factors favor transfer

Of the private interest factors, three weigh in favor of transfer, and one does not.

### A.  Relative ease of access to sources of proof favors transfer.

The parties split the sources of proof into two categories: physical evidence, consisting primarily of documents, and witnesses, the large majority of whom reside in the District of Nebraska. ECF Nos. 16 at 6–7 and 18 at 7–8. The parties agree that the physical evidence in this case is electronically transmittable to either court equally and therefore does not weigh in favor of transfer. ECF Nos. 16 at 7 and 18 at 7–8. The parties disagree on whether the location of witnesses, which weighs for transferring the case, are properly part of this factor. ECF Nos. 16 at 6–7; 18 at 7–8; and 20 at 3.

Courts in this district have at times considered the location and availability of witnesses for this first of the private factors, and at other times have not. *Compare, e.g., Camatic Proprietary Ltd. v. Irwin Seating Co.*, 3:16-CV-0795-M, 2017 WL 2362029, at *3 (N.D. Tex. May 31, 2017) (Lynn, C.J.) (considering only physical evidence for the first factor) *with, e.g., Cooper-McClintock v. United States*, 3:11-CV-1412-B, 2011 WL 5182259, at *3 (N.D. Tex. Oct. 31, 2011) (Boyle, J.)

4

(considering the location of witnesses in analyzing the first factor); *Am. Leather Operations, LLC v. Ultra-Mek, Inc.*, 3:13-CV-4496-N, 2014 WL 12584334, at *2 (N.D. Tex. Apr. 8, 2014) (Godbey, J.) (same). No court seems to have considered the explicit argument that witnesses are not included in this factor. The plain language suggests that the factor includes witnesses: it requires courts to consider "relative ease of access to sources of proof," and witnesses are an important source of proof. Certainly, the second and third of the private factors are concerned with witnesses, but they ask courts to consider more specific concerns than this factor does. Because most of the witnesses reside in the District of Nebraska, and the physical evidence is transmittable with equal ease to either court, this factor favors transfer.

    **B.    The availability of compulsory process to secure the attendance of witnesses favors transfer.**

This factor favors transfer when the transferee venue has absolute subpoena power over a greater number of non-party witnesses than the current venue does. *Internet Mach. LLC v. Alienware Corp.*, No. 6:10-CV-023, 2011 WL 2292961, at *6 (E.D. Tex. June 7, 2011). A district court may compel attendance of a non-party witness through subpoena if he or she lives within the district or if the proceedings are "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1).

BNSF has identified twelve potential witnesses, eight of whom live in Nebraska and are subject to the absolute subpoena power of the transferee venue in Nebraska. ECF No. 16 at 10. BNSF has identified six non-party witnesses residing in Nebraska, including the two doctors who treated Neylon and three witnesses who were at the investigation concerning his injury: Ronald Trauernicht, his union chairman; Dave McCoy, his union vice chairman; and Brian Anders. ECF Nos. 16 at 8 and 20 at 4. For his part, Neylon identifies two key witnesses who live in Texas, both BNSF officers. ECF No. 18 at 3. But only one of these witnesses, Kathleen Maglisceau, resides in

Fort Worth and is subject to compulsion under Rule 45. ECF No. 20 at 6. Neylon argues that the six witnesses BNSF identified are not as important to this case as the managers who made the decision to terminate him. ECF No. 18 at 9. However, the doctors who treated Neylon for the injury that he was fired for reporting late and the union representatives who were involved in the investigation and termination process are clearly key witnesses in an employment discrimination case. More witnesses are subject to subpoena in Nebraska, and this factor clearly favors transfer.

### C. The cost of attendance for willing witnesses favors transfer.

"The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue." *The Whistler Group, Inc. v. PNI Corp.*, CIV.A.3:03-CV-1536-G, 2003 WL 22939214, at *3 (N.D. Tex. Dec. 5, 2003) (Fish, C.J.). "Of the witnesses, the convenience of the non-party witnesses is accorded the greatest weight." *Id.*

As the previous factor's analysis demonstrates, the majority of non-party witnesses reside in Nebraska. Neylon has been able to point to only one witness located in the Fort Worth Division. These venues are over 600 miles apart. ECF No. 16 at 10. The Fifth Circuit has set a 100-mile threshold for convenience to witnesses, after which "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Am.*, 545 F.3d 304 at 317 (citing *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004)). And neither party has made any showing of particular inconvenience to a witness beyond geographical distance. *See Raz Imports, Inc. v. Luminara Worldwide, LLC*, 3:15-CV-02223-M, 2015 WL 6692107, at *6 (N.D. Tex. Nov. 3, 2015). As there are more witnesses for whom Nebraska will be convenient than Fort Worth, this factor also favors transfer.

**D. All other practical problems that make trial of a case easy, expeditious and inexpensive do not favor transfer.**

The parties concede that this factor is neutral and does not favor transfer. ECF Nos. 16 at 10–11 and 11 at 11–12. The undersigned agrees.

**II. The public interest factors favor transfer.**

Of the public interest factors, none weigh in favor of transfer, and one weighs slightly against transfer. The other three public interest factors are neutral.

**A. The administrative difficulties flowing from court congestion weigh slightly against transfer.**

BNSF argues that the Northern District of Texas is more congested than the District of Nebraska, as the Northern District has a significantly higher number of cases. Federal Court Management Statistics—Profiles, United States Courts (June 30, 2017), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2017.pdf. But, as Neylon points out, congestion is better measured by the median time of proceedings in the two locations, not simply by the number of cases pending. *See Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016) (noting that "[i]n analyzing this factor courts often consider the median time interval from case filing to disposition" and finding that median times of 34.6 months compared to 21.3 months was a significant difference). As of June 2017, the District of Nebraska had a somewhat higher median time of 9 months from filing to disposition than the Northern District of Texas did at 7.3 months. Federal Court Management Statistics—Profiles. As the current venue is slightly less congested, this factor weighs slightly against transfer.

B.  **The local interest in having localized interests decided at home does not favor transfer.**

This factor considers whether either venue has connections to the events that gave rise to the suit. *In re Volkswagen of Am.*, 545 F.3d at 318. Certainly, most of the facts, the plaintiff, and the majority of the witnesses are localized in Nebraska. However, the defendant's principal place of business is in Fort Worth, and Neylon claims that the most important fact—the decision of his actual termination—was made in Fort Worth at BNSF's headquarters. ECF No. 18 at 12. Neither party wishes to have this case adjudicated in its place of residence. Yet both venue states have an interest in adjudicating the claims of their residents. *See Am. Leather Operations*, 3:13-CV-4496-N, 2014 WL 12584334, at *3. This factor is therefore neutral and does not favor transfer.

C.  **The familiarity of the forum with the law that will govern the case does not favor transfer.**

The parties agree that because this case concerns only the application of federal law, the federal courts in both venues should be equally familiar with the law in this case. ECF Nos. 16 at 11 and 18 at 13. This factor is neutral and does not favor transfer.

D.  **The avoidance of unnecessary problems of conflict of laws or in the application of foreign law does not favor transfer.**

The parties agree that there are no problems of conflict of laws or foreign law in this case. ECF Nos. 16 at 11 and 18 at 13–14. This factor is neutral and does not favor transfer.

## CONCLUSION

Most of the venue transfer factors, in particular those having to do with the location of witnesses, weigh toward transferring this case from Texas to Nebraska, where Neylon worked and where most of the operative facts in this employment discrimination case occurred. The undersigned therefore **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion to Transfer Venue (ECF No. 16) and **TRANSFER** this case to the Lincoln Division of the District

of Nebraska.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed November 7, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE